# In the United States Court of Federal Claims

Nos. 20-120C & 20-150C (consolidated)
(Filed: June 9, 2020)
(Re-filed: July 17, 2020)[1]

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * <br> QUANTICO TACTICAL INC., <br><br> *Plaintiff*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*, <br> and <br><br> ATLANTIC DIVING SUPPLY, INC. <br><br> *Intervenor-Defendant*. <br><br> * * * * * * * * * * * * * * * * * * * * * * * * * <br> UNIFIRE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*. | Bid Protest; Pre-Award Bid Protest; Assertions of Bias; Motion to Complete and Supplement Administrative Record; Limited Discovery |

---

[1] Pursuant to the Protective Order entered in this case, this opinion was held open for fourteen days during which the parties could propose to chambers any appropriate redactions. Plaintiff proposed certain redactions, in which the government and intervenor do not object. Thus, for good cause shown, we adopt plaintiff's proposed redactions. Those redactions are indicated by closed brackets below.

1

* * * * * * * * * * * * * * * * * * * * * * * *

*Daniel R. Forman*, Washington, D.C., with whom were *Anuj Vohra,* and *Rina M. Gashaw*, for plaintiff.

*Doug Hoffman* and *Mariana Teresa Acevedo*, Trial Attorneys, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, with whom were *Martin F. Hockey, Jr.*, Deputy Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General, for defendant.

*Paul F. Khoury*, Washington, DC, with whom were *John R. Prairie*, *Kendra P. Norwood*, and *J. Ryan Frazee*, for intervenor-defendant.

## OPINION AND ORDER

Pending is plaintiff Quantico Tactical, Inc.'s ("Quantico") March 12, 2020 motion to supplement and complete the administrative record, along with its request to take discovery from the United States and the intervenor, which plaintiff believes will be probative of its allegations of bad faith and bias. The motion is fully briefed, and telephonic oral argument was held on June 4, 2020, at which point we announced that we will grant in part plaintiff's motion to supplement and complete the administrative record and deny the motion in all other respects. We announce our reasons here.

## BACKGROUND

On November 16, 2018 the Defense Logistics Agency ("DLA") issued Solicitation No. SPE8EJ-18-R-0001 ("RFP") for the Special Operations Equipment ("SOE") Tailored Logistics Support ("TLS") Program, with an original proposal deadline of January 8, 2019, which was later extended to January 18, 2019. Plaintiff submitted a timely proposal. Nine months later, DLA informed Quantico that it was being excluded from the competitive range.

On December 23, 2019, Quantico submitted a bid protest to the Government Accountability Office ("GAO"). Unsatisfied with the agency's production of documents at GAO, Quantico withdrew its GAO protest and filed the present action on February 3, 2020. Quantico's complaint recites that Atlantic Diving Supply, Inc. ("ADS"), the intervenor here, settled several False Claims Act ("FCA") claims which involved allegations that ADS and its owners

2

committed fraud, rigged bids, and bribed DLA officials in order to gain preferential treatment under the SOE TLS program. On February 24, 2020, another offeror excluded from the competitive range, Unifire, Inc. ("Unifire"), filed a protest here, which was subsequently consolidated with this case as the lead. On February 27, 2020, one of the offerors in the competitive range, ADS, filed a motion to intervene, alleging that Quantico's protest implicated its own interests in remaining in the competitive range. Concurrently, on February 27, 2020, the AR was filed. We granted intervention on March 3, 2020.

On March 12, 2020, Quantico moved to supplement the administrative record ("AR"), with materials attached to its filing and to take limited discovery. Specifically, Quantico seeks to supplement the AR with the district court FCA complaint and settlement agreements. *See* Ex. 48, 49 (ECF No. 30-3). Quantico also seeks to supplement with a declaration of Quantico's Founder and Chief Executive Officer, David Hensley, in which he raises allegations of bias and retaliation by DLA against Quantico in the current procurement. *See* Ex. 1 (ECF No. 30-2). Lastly, Quantico seeks to supplement with price analysis and evaluation materials "evincing the government's consideration of ADS fraud." Pl.'s Mot. to Supp. 8.

In addition, Quantico seeks three categories of discovery: (1) requests for production regarding bias and bad faith; (2) depositions of three individuals who Quantico claims were "instrumental in the SOE TLS Program"; and (3) a handful of interrogatories which Quantico argues will explain some of the "most troubling aspects of the SOE TLS procurement process[.]" Pl.'s Mot. to Supp. at 33-36.

On March 20, 2020, ADS moved for disqualification of Latham & Watkins ("Latham") as counsel for Quantico because the firm had previously represented ADS in what it alleged was a related matter. On May 1, 2020, we granted ADS's motion. Subsequently, on May 11, 2020, Quantico filed a motion to substitute Crowell & Moring LLP for Latham as counsel in this case. The court then convened a status conference on May 26, 2020 to inquire whether new counsel wished to amend plaintiff's request to supplement. New counsel declined and asked the court to decide the motion as it was filed.

We held telephonic oral argument on plaintiff's motion to supplement on June 4, 2020. We announced at the end of oral argument that we would deny the motion to supplement and complete

the administrative record with the exception only of two documents mentioned below.

## DISCUSSION

I.      Supplementing the Administrative Record

Bid protests in this court are conducted under the standards set forth in the Administrative Procedures Act. 28 U.S.C. § 1491(b)(1)(4) (2012). Supplementation of the record is warranted only when "the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009). As such, "the parties' ability to supplement the administrative record is limited[,]" and "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* at 1379 (quoting *Camp v. Pitts*, 411 U.S. 138, 142-43) (1973).

The administrative record, however, may be insufficient and thus supplementation may be warranted when it is missing "relevant information that by its very nature would not be found in an agency record-such as evidence of bad faith, information relied upon but omitted from the paper record, or the content of conversations." *Inforeliance Corp. v. United States*, 118 Fed. Cl. 744, 747 (2014) (quoting *Orion Int'l Techs v. United States*, 60 Fed. Cl. 343-44 (2004) (footnotes omitted)).

Quantico argues that the DLA's record is incomplete in five ways and seeks to supplement and complete the record with materials that allegedly show a history of DLA's bad faith, bias, and retaliation against Quantico. First, the AR as filed includes a December 4, 2019 memorandum titled "Pre-Negotiation Briefing Memorandum/ Competitive Range Determination Special Operations Equipment Tailored Logistics Support," Pl.'s Mot. to Supp. at 34, (ECF No. 30-1); AR Tab 53, which indicates that it had two attachments: Attachment 1 PEL ["Price Evaluation List] Outliers All Offers; and Attachment 2 PEL Outliers and Objectives – Competitive Range. Quantico argues that because the stated purpose of this memorandum was to determine which offerors are in the competitive range and to define the negotiation objectives in order to conduct discussions with offerors, the attachments should be included in the AR.

In response, the government argues that the attachments are wholly irrelevant to this court's inquiry because they were generated to facilitate negotiations with the offerors selected for the competitive range. Moreover, the government argues that the spreadsheets at issue merely contain slight variations of pricing analysis that is already included in the AR. Because these attachments appear to be documents that the agency relied on in its evaluation of offerors, we direct the government to supplement the AR with these two attachments.

Second, Quantico argues that the AR does not include documentation of DLA's substantive price evaluation other than a copy of the spreadsheet used by evaluators to make calculations. In response, the government asserts that the spreadsheet itself allows Quantico to examine whether "offerors met the requirement to quote a minimum of 90% of the required items listed," confirms that DLA "compar[ed] offerors to each other," and establishes that DLA "calculate[ed] the 'Total Evaluated Price.'" Def.'s Opp. to Pl.'s Mot. to Supp. at 14. We agree. Quantico has sufficient information with respect to the price evaluation actually conducted.

Third, Quantico argues that "[t]he AR does not include any drafts or workpapers relating to the Government's substantive evaluation of proposals," which are "especially important in this case" because they involve "credible and well-grounded allegations of bias and bad faith . . . ." Pl.'s Mot. to Supp. at 41. We agree with the government that these appear to be internal communications and draft documents amounting to deliberative process materials.

Fourth, Quantico argues that there is an unaccounted and unexplained six-month gap[2] in the AR and that there are "no documents that address or even recognize the agency's decision-making during this time period." Pl.'s Mot. to Supp. at 42. It does not reference any particular documents, however, which were improperly excluded. The government explains that the evaluations completed in June 2019 were only a part of the competitive range determination process and that appropriate review had to occur after the competitive range determination was prepared. As this procurement has an estimated $13 billion minimum value, we find the six-month gap in

---

[2] The AR shows that the evaluation of offerors concluded in June 2019, however, the technical evaluation materials and competitive range determination are dated on the same day, December 4, 2019.

documents during which DLA prepared and reviewed competitive range determination material does not create a presumption of an omission.

Fifth, Quantico argues that the AR should include "discussion of [ADS's] FCA settlements or the underlying fraud allegations, or consideration of the issues that these cases raise." Pl.'s Mot. to Supp. at 43. We disagree. As we discuss below in connection with Quantico's request for discovery, ADS's prior FCA settlements are beyond the scope of this procurement.

We concluded that the AR as filed should be supplemented only with respect to the two attachments to the "Pre-Negotiation Briefing Memorandum/ Competitive Range Determination Special Operations Equipment Tailored Logistics Support" memorandum as this information was relied upon but omitted from being included in the AR.

II.     Discovery Based on Allegations of Bias and Bad Faith

Quantico alleges that this procurement has been tainted with DLA's bias and retaliation resulting from Quantico's requests that DLA take appropriate action based on ADS's alleged procurement fraud. Specifically, Quantico argues that from 2017 to 2019, it repeatedly asked DLA "to consider suspension or debarment of ADS to protect the Government from ADS and its documented fraud against DLA." Pl.'s Mot. to Supp. 18. Quantico asserts that at first the Deputy Inspector General ("IG") responded favorably to Mr. Hensley and even met in person with him. Quantico was eventually informed, however, that no investigation or debarment action regarding ADS would move forward. Moreover, Quantico asserts that after ADS's FCA case was settled "the Deputy IG significantly changed his demeanor toward Quantico.[3]" *Id.* at 19.

Mr. Hensley alleges unequal treatment regarding the award of task orders to ADS for non-conforming supplies at higher prices and that "DLA substantially downgraded Quantico's CPAR rating under the

---

3 For example, Quantico provides that when Mr. Hensley asked to meet with the Deputy IG concerning the FCA settlement, the Deputy IG responded, "Neither the Inspector General or I will be available to meet with you on Tuesday, August 27, 2019. I recommend you submit your new complaint to our hotline." Pl.'s Mot. to Supp. at 19.

SOE TLS program despite Quantico's objectively exceptional performance and the failure of DLA to identify a single concrete incident warranting the lower CPAR rating." *Id.* at 20. Quantico includes that DLA's past performance evaluation is "concrete evidence of bias against Quantico." *Id*. at 10.

Agency decisions are entitled to the "presumptions of regularity and of good faith conduct[.]" *Inforeliance,* 118 Fed Cl. at 747. Thus, "allegations of bad faith must rest on a strong evidentiary footing to overcome" the presumption. *Beta Analytics International, Inc. v. United States*, 61 Fed. Cl. 223, 226 (2004) (citations omitted). "[A]llegations of bad faith must be based on hard facts in order to justify . . . supplementation of the administrative record." *Int'l Res. Recovery, Inc. v. United States*, 61 Fed. Cl. 38, 43 (2004).

In *Beta Analytics*, this court established a two-part test for a plaintiff seeking discovery based on bad faith allegations. *Id.* First, a plaintiff must "make a threshold showing of either *a motivation for the Government employee in question to have acted in bad faith* or *conduct that is hard to explain absent bad faith*." *Id.* (emphasis added). "Second, the plaintiff must persuade the Court that discovery could lead to evidence which would provide the level of proof required to overcome the presumption of regularity and good faith." *Id.* Moreover, "[i]nnuendo or suspicion is not enough to demonstrate bad faith and thus to justify discovery." *Id.* (citing *Orion*, 60 Fed. Cl. at 344).

In support of its argument, Quantico cites to *Starry Assocs. v. United States*, where this Court granted discovery in a case where "a previously-recused agency official stepped in to cancel a solicitation after the agency was unsuccessful in multiple efforts to award the contract to his former employer." 125 Fed. Cl. 613, 623 (2015). In *Starry*, this Court found hard evidence of bias in the AR in the form of signed statements of the previously-recused agency official whom had exerted undue influence over the procurement process. *Id.* at 620. Quantico also cites to *Pitney Bowes Gov't Solutions v. United States*, where this Court also granted limited discovery to examine "a friendly, personal relationship between [* * *], a member and chairperson of the Technical Evaluation Panel ("TEP") that considered the competitors' offer, and Donald Dilks," a vice president of the awardees' subcontractor. 93 Fed. Cl. 327, 330 (2010).

7

Here, Quantico provides neither a motivation for any particular government employee to have acted in bad faith nor conduct that is hard to explain absent bad faith. In fact, Quantico does not point to any clear evidence of bias other than a "change in demeanor" from DLA officials towards Mr. Hensley, which we find totally insufficient as evidence of bias. The past performance evaluation challenge goes straight to the merits of the underlying bid protest, which can be evaluated without considering bad faith, discussed in more depth below.

We find that Quantico's allegations are the type of "[i]nnuendo or suspicion" that this Court has deemed insufficient to justify discovery. *Beta Analytics*, 61 Fed. Cl. at 226. DLA has offered its explanation for the decision to omit Quantico from the competitive range, which it attributes to [


].[4] AR Tab 51 at 3577, 3580-81. Quantico's disagreement with the agency's conclusions is not evidence of bad faith, but will be tested when the merits of the protest are addressed. The request for supplementation and discovery must be denied.

## CONCLUSION

Based on the foregoing, we grant plaintiff's motion to complete the administrative record only with respect to attachments to the "Pre-Negotiation Briefing Memorandum/ Competitive Range Determination Special Operations Equipment Tailored Logistics Support" memorandum. The motion is denied in all other respects.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge

---

[4] The government contends that Quantico's proposal lacked plans to meet the [               ] and lacked [                    ]. *See* AR Tab 51 at 3581-83. Thus, it was "Quantico's failure to show it could meet the solicitation's requirements that precluded its inclusion in the competitive range . . . ." Def.'s Opp. to Pl.'s Mot. to Supp. at 29.